# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

———————————————

№ 16-CV-2290 (JFB)

———————————————

JONI MAZARIEGO,

Petitioner,

VERSUS

MICHAEL KIRKPATRICK, SUPERINTENDENT,

Respondent.

———————————————

**MEMORANDUM AND ORDER**
July 26, 2017

———————————————

JOSEPH F. BIANCO, District Judge:

Joni Mazariego (hereinafter "petitioner" or "Mazariego") petitions this Court for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging his conviction in state court. Petitioner was found guilty of manslaughter in the first degree, in violation of N.Y. Penal Law § 125.20[1]; gang assault in the first degree, in violation of N.Y. Penal Law § 120.07; and attempted assault in the second degree, in violation of N.Y. Penal Law §§ 110.00/120.05[2]. Mazariego was sentenced to concurrent determinate sentences of twenty years on the manslaughter and the gang assault charges, as well as a concurrent indeterminate term of one and one-third to four years on the attempted assault charge, with a period of five years' post-release supervision. The gang assault conviction was later reduced to attempted gang assault in the first degree, in violation of N.Y. Penal Law §§ 110.00/120.07. Petitioner was resentenced to fifteen years on this amended charge, with five years' post-release supervision, to run concurrently with the sentences for the other charges, which were not disturbed.

In the instant habeas petition, petitioner challenges his conviction, claiming that his constitutional rights were violated on the following grounds:[1] (1) he was denied effective assistance of trial counsel when

---

[1] Petitioner also claims in the habeas petition that guilt of gang assault in the first degree was not established beyond a reasonable doubt. (*See* Pet., ECF No. 1, at 8.) However, petitioner is not raising this ground at the federal level because that count was reduced to attempted gang assault in the first degree by the New York Appellate Division. (*See id.*)

counsel failed to request a charge for the lesser included offense of manslaughter in the second degree; (2) his conviction for attempted assault in the second degree was against the weight of the evidence; (3) he was prejudiced at trial by the testimony of a non-expert, whom the trial court wrongly deemed an expert; (4) his conviction for manslaughter in the first degree was not supported by legally sufficient evidence and was against the weight of the evidence; and (5) he should have been resentenced on the manslaughter in the first degree and attempted assault in the second degree counts when he was resentenced on the attempted gang assault in the first degree count. (Pet. at 3-6.)

For the reasons discussed below, petitioner's request for a writ of habeas corpus is denied in its entirety.

## I.  BACKGROUND AND PROCEDURAL HISTORY

### A.    Background

The following facts are adduced from the instant petition and underlying record.

Petitioner's conviction arose from a gang-related altercation.  On December 23, 2010, Mazariego and some of his fellow MS-13 gang members went to the El Pacifico bar in Hempstead, New York. (T.[2] 475-76, 638-39.) Erik Miranda ("Miranda"), John Pareja ("Pareja"), and Plutarco Galindo ("Galindo"), members of the Sur Trece gang, were also at the El Pacifico bar that evening. (*Id.* 607-12.)  Soon after arriving at the bar, petitioner and his friends noticed Galindo and Pareja and "threw" MS-13 gang signs at them. (*Id.* at 611-12.) Mazariego and his fellow gang members believed that Galindo and Pareja were members of the 18th Street

Gang, a rival of MS-13. (*Id.* at 612.) Soon after the gang signs were thrown, Galindo, Pareja, and Miranda left the bar. (*Id.* at 613-16.) Petitioner and his fellow gang members followed the Sur Trece gang members out of the El Pacifico and attacked them. (*Id.* at 616-21.) Petitioner was seen on a surveillance video pulling what looked like a knife from his pocket, motioning as if he was opening the knife, and seconds later making stabbing motions towards Galindo. (People's Exh. 3.) The video also shows that petitioner appeared to be wearing an Ace bandage on his hand throughout the altercation. (T. 441.) Galindo later died from blood loss resulting from a perforated heart, which was caused by stab wounds. (*Id.* at 490-91.) During the brawl, Pareja was also stabbed, and Miranda was punched and hit with a belt. (*Id.* at 640-42.) At trial, Antonio Gutierrez, an acquaintance of Mazariego, testified that petitioner admitted to him that he had "killed somebody" at the El Pacifico Bar. (*Id.* at 564.) Furthermore, Detective Gonzalo Londono of the Nassau County Police Department, who has extensive experience investigating MS-13 and other gangs, testified at trial to explain the events that took place at the El Pacifico bar. (*Id.* at 409-73.) The trial court deemed Londono an expert in MS-13. (*Id.* at 419.)

Following a jury trial, petitioner was convicted on May 9, 2012 of manslaughter in the first degree (N.Y. Penal Law § 125.20[1]); gang assault in the first degree (N.Y. Penal Law § 120.07); and attempted assault in the second degree (N.Y. Penal Law §§ 110.00/120.05[2]). (T. 820-22.)  During the trial, the prosecutor requested that petitioner be charged with manslaughter in the first degree and gang assault in the second degree as lesser included offenses to murder in the second degree and gang assault in the

---

[2] "T." refers to the transcript of petitioner's criminal trial.  (ECF No. 5.)

first degree, respectively. (*Id.* at 663-64.) Petitioner's attorney joined in this request and made no additional request for additional lesser-included offense charges. (*Id.* at 675-76.)

On July 18, 2012, petitioner was sentenced to concurrent determinate sentences of twenty years on the manslaughter in the first degree count and the gang assault in the first degree count, with a period of five years' post-release supervision. (Sentencing Tr., ECF No. 5-10, at 15-16.) Further, petitioner was sentenced to an indeterminate term of one and one-third to four years on the attempted assault in the second degree count, with all counts to run concurrently. (*Id.* at 16.)

### B.      Procedural History

On August 19, 2013, petitioner appealed to the Supreme Court, Appellate Division, Second Judicial Department. He argued that: (1) gang assault in the first degree was not proven beyond a reasonable doubt; (2) defense counsel rendered ineffective assistance by failing to request the lesser-included offense of manslaughter in the second degree; (3) the conviction for attempted assault in the second degree was against the weight of the evidence; (4) the trial court erred in deeming Detective Londono an expert, which made Londono's testimony improper bolstering or opinion evidence; and (5) there was insufficient evidence to convict petitioner of manslaughter in the first degree and the conviction on that count was against the weight of the evidence. (*See* Petitioner's Appellate Division Br., ECF No. 5-11.) On May 28, 2014, the Appellate Division reduced the conviction for gang assault in the first degree to attempted gang assault in the first degree and otherwise affirmed the judgement of the trial court. *See People v.*

*Mazariego*, 986 N.Y.S.2d 235 (App. Div. 2d Dep't 2014). The case was then remanded for resentencing on the attempted gang assault count only. *Id.* On May 28, 2015, petitioner was denied leave to appeal to the New York State Court of Appeals. *See People v. Mazariego*, 25 N.Y.3d 1074 (2015).

On June 26, 2014, petitioner was resentenced to fifteen years in prison and five years' post-release supervision on the attempted gang assault count, to run concurrently with the other convictions, which were not disturbed. (*See* Minutes of Resentencing, ECF No. 5-18.) On February 22, 2016, petitioner appealed from his resentencing to the Appellate Division, arguing that the trial court was in error by failing to resentence petitioner on all the counts of which he was convicted. (*See* Petitioner's Appellate Division Sentencing Br., ECF No. 5-19.) However, on October 12, 2016, the Appellate Division held that petitioner was not entitled to be resentenced on the manslaughter in the first degree and attempted assault in the second degree counts. *See People v. Mazariego*, 38 N.Y.S.3d 820 (App. Div. 2d Dep't 2016). Petitioner did not seek leave to appeal to the New York Court of Appeals.

### C.      The Instant Petition

On April 20, 2016, while his second appeal was pending with the Appellate Division, petitioner filed for habeas corpus relief in this Court (the "Petition"). Petitioner claimed that he is entitled to relief because: (1) defense counsel provided ineffective assistance by failing to request a lesser-included charge of manslaughter in the second degree; (2) the conviction for attempted assault in the second degree was against the weight of the evidence; (3) Detective Londono's testimony was improperly admitted, which constituted

improper bolstering; and (4) the conviction for manslaughter in the first degree was not supported by sufficient evidence and was against the weight of the evidence. (*See* Pet. at 3.) Petitioner also raised the ground that his sentence should be vacated because petitioner was not resentenced on the counts of manslaughter in the first degree and attempted assault in the second degree. (*Id*. at 6.) As petitioner acknowledges, that claim was still pending in the Appellate Division when it was submitted in the Petition. (*Id* at 7.) Petitioner also abandoned his federal habeas claim that the conviction for gang assault in the first degree was not proven beyond a reasonable doubt. (*Id*. at 8.)

On May 10, 2016, this Court filed an Order to Show Cause ordering the respondent to reply to the Petition within thirty days from the filing of the Order. (ECF No. 4.) On June 9, 2016, respondent filed in this Court a motion to dismiss the Petition because it contains both exhausted and unexhausted claims. (ECF No. 5.) On January 9, 2017, this Court denied the motion and stayed the Petition on the conditions that petitioner file any motions not yet filed in state court within thirty days and that petitioner return to federal court by advising the Court in writing within thirty days after exhausting state remedies. (ECF No. 6.)

In a letter dated January 21, 2017, petitioner wrote to this Court to request that this Court order the Appellate Division to forward him both the decision and the order on the appeal from his resentence. (ECF No. 7.) On January 27, 2017, this Court declined to direct the Appellate Division to do so, but it continued the stay of the Petition, pending the exhaustion of petitioner's state remedies. (ECF No. 8.) In a letter dated March 10, 2017, petitioner wrote to this Court to declare that he had exhausted his state remedies. (ECF No. 9.) On March 21, 2017, this Court

vacated the stay of the Petition and allowed respondent forty-five days to reply to the Petition. (ECF No. 10.) On May 3, 2017, respondent filed its brief in opposition to the Petition. (*See* Resp't Br., ECF No. 11.) On May 24, 2017, petitioner filed his reply. (ECF No. 13.)

The Court has fully considered the parties' submissions, as well as the underlying record.

## II.    STANDARD OF REVIEW

To determine whether petitioner is entitled to a writ of habeas corpus, a federal court must apply the standard of review set forth in 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which provides, in relevant part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented by the State court proceedings.

28 U.S.C. § 2554. "Clearly established Federal law" is compromised of "the

holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Green v. Travis*, 414 F.3d 288, 296 (2d Cir. 2005) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

A decision is "contrary to" clearly established federal law, as determined by the Supreme Court, "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. A decision is an "unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principles from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.*

AEDPA establishes a deferential standard of review: "a federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decisions applied clearly established federal law erroneously or incorrectly. Rather, that application must be unreasonable." *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (quoting *Williams*, 529 U.S. at 411). The Second Circuit added that, while "[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Id.* (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)). Finally, "if the federal claim was not adjudicated on the merits, 'AEDPA deference is not required, and conclusions of law and mixed feelings of fact and conclusions of law are reviewed *de novo*.'" *Dolphy v. Mantello*, 552 F.3d 236, 238 (2d

Cir. 2009) (quoting *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)).

## III.    DISCUSSION

### A.    Procedural Bar

#### 1.    Failure to Exhaust

As a threshold matter, a district court shall not review a habeas petition unless "the applicant has exhausted the remedies available in the courts of the state." 28 U.S.C. § 2254(b)(1)(A). Although a state prisoner need not petition for certiorari to the United States Supreme Court to exhaust his claims, *see Lawrence v. Florida*, 549 U.S. 327, 333 (2007), petitioner must fairly present his federal constitutional claims to the highest state court having jurisdiction over them. *See Daye v. Attorney Gen. of N.Y.*, 696 F.2d 186, 191 n.3 (2d Cir. 1982) (en banc). Exhaustion of state remedies requires that a petitioner "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971) (quotation marks omitted) (alteration in original)).

However, "it is not sufficient merely that the federal habeas applicant has been through the state courts." *Picard*, 404 U.S. at 275-76. On the contrary, to provide the State with the necessary "opportunity," the prisoner must "fairly present" his claims in each appropriate state court (including a state supreme court with powers of discretionary review), alerting that court to the federal nature of the claim and "giv[ing] the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v.*

5

*Boerckel*, 526 U.S. 838, 845 (1999); *see also Duncan*, 513 U.S. at 365-66. "A petitioner has 'fairly presented' his claim only if he has 'informed the state court of both the factual and legal premises of the claim he asserts in federal court.'" *Jones v. Keane*, 329 F.3d 290, 294-95 (2d Cir. 2003) (quoting *Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997)). "Specifically, [petitioner] must have set forth in state court all of the essential factual allegations asserted in his federal petition; if material factual allegation were omitted, the state court has not had a fair opportunity to rule on the claim." *Daye*, 696 F.2d at 191-92 (citing *Picard*, 404 U.S. at 276; *United States ex rel. Cleveland v. Casscles*, 479 F.2d 15, 19-20 (2d Cir. 1973)). To that end, "[t]he chief purposes of the exhaustion doctrine would be frustrated if the federal habeas court were to rule on a claim whose fundamental legal basis was substantially different from that asserted in state court." *Id.* at 192 (footnote omitted).

## 2. State Procedural Requirements

Like the failure to exhaust a claim, the failure to satisfy the state's procedural requirements deprives the state courts of an opportunity to address the federal constitutional or statutory issues in a petitioner's claim. *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991). "[A] claim is procedurally defaulted for the purposes of federal habeas review where 'the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Reyes v. Keane*, 118 F.3d 136, 140 (2d Cir. 1997) (quoting *Coleman*, 501 U.S. at 735) (additional citations and emphasis omitted). Where the petitioner "can no longer obtain state-court review of his present claims on account of his procedural default, those

claims are . . . to be deemed exhausted." *DiGuglielmo v. Smith*, 366 F.3d 130, 135 (2d Cir. 2004) (citing *Harris v. Reed*, 489 U.S. 255, 263 n. 9 (1989); *Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991)). Therefore, for exhaustion purposes, "a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred." *Keane*, 118 F.3d at 139 (quoting *Hoke*, 933 F.2d at 120).

However, "exhaustion in this sense does not automatically entitle the habeas petitioner to litigate his or her claims in federal court. Instead, if the petitioner procedurally defaulted on those claims, the prisoner generally is barred from asserting those claims in a federal habeas proceeding." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006) (citing *Gray v. Netherland*, 518 U.S. 152, 162 (1996); *Coleman*, 501 U.S. at 744-51). "[T]he procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default." *Netherland*, 518 U.S. at 162 (citations omitted).

The procedural bar rule in the review of applications for writs of habeas corpus is based on the comity and respect that state judgments must be accorded. *See House v. Bell*, 547 U.S. 518, 536 (2006). Petitioner's federal claims also may be procedurally barred from habeas corpus review if they were decided at the state level on adequate and independent grounds. *See Coleman*, 501 U.S. at 729-33. The purpose of this rule is to maintain the delicate balance of federalism by retaining a state's rights to enforce its laws and to maintain its judicial procedures as it sees fit. *Id.* at 730-31.

Once it is determined that a claim is procedurally barred under state rules, a federal court may still review such a claim on its merits if the petitioner can demonstrate both cause for the default and that prejudice results therefrom, or if he can demonstrate that the failure to consider the claim will result in a miscarriage of justice. *Id.* at 750 (citations omitted). A miscarriage of justice is demonstrated in extraordinary cases, such as where a constitutional violation results in the conviction of an individual who is actually innocent. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

### 3. Application

As a threshold matter, respondent argues that petitioner's claims that (1) the trial court made an erroneous evidentiary ruling in certifying Detective Londono as an expert and therefore improperly admitted Londono's testimony; (2) the conviction for attempted assault in the second degree was against the weight of the evidence; and (3) petitioner should have been resentenced on all counts when he was resentenced on the attempted gang assault in the first degree are procedurally barred from habeas review by the Court. The Court agrees.

With respect to the resentencing claim, Mazariego failed to appeal to the New York State Court of Appeals. Petitioner properly appealed his resentence to the Appellate Division, which rejected the appeal. *See People v. Mazariego*, 38 N.Y.S.3d 820 (App. Div. 2d Dep't. 2016). After the appeal was rejected, petitioner had thirty days to seek leave to the Court of Appeals, which he failed to do. *See* C.P.L. §§ 460.10(5)(a), 460.20, 460.30(1). Thus, petitioner's claim that he should have been resentenced on all counts when he was resentenced on the attempted gang assault in the first degree count was not properly raised on appeal, and therefore, it

was not fairly presented to "[t]he state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971).) Accordingly, the claim was not properly exhausted and cannot be considered by this Court.

Additionally, all three of petitioner's claims failed to raise a constitutional question before any New York appellate court. With respect to the trial court's ruling on the expert testimony claim, petitioner cited solely to cases from the Appellate Division and the trial level. (*See* Petitioner's Appellate Division Brief at 28-29.) As for the weight of the evidence claim, petitioner cited solely to *People v. Danielson*, 9 N.Y.3d 342 (2007). (*See* Petitioner's Appellate Division Brief, ECF No. 5-19, at 27-28.) Furthermore, on the resentencing claim, petitioner cited solely to Section 380.20 of the New York Criminal Procedure Law and a series of New York cases. (*See* Petitioner's Appellate Division Sentencing Brief.) Since petitioner failed to argue that any of these purported errors deprived him of any federal constitutional rights, petitioner failed to present errors of a constitutional magnitude to the state courts, making these claims procedurally defaulted. *See Carvajal v. Artus*, 633 F.3d 95, 107 (2d Cir. 2011) (petitioner's claims were procedurally barred when he relied solely on "state court decisions interpreting state statutory law" on appeal).

To overcome a procedural bar, petitioner must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. However, petitioner has failed to meet his burden.

Petitioner has not provided any explanation for his failure to properly exhaust all of his claims in state court or for his failure to raise federal constitutional issues in state court.

Thus, because petitioner has not provided a satisfactory explanation for his failure to properly exhaust these claims in state court, and because petitioner has demonstrated neither prejudice resulting from the default nor a miscarriage of justice, the claims are procedurally barred from review by this Court. In any event, assuming *arguendo* that these claims are reviewable, they are without merit, as is set forth *infra*.

## B. The Merits

### 1. Ineffective Assistance of Trial Counsel

#### a. Standard

Under the standard promulgated by *Strickland v. Washington*, 466 U.S. 668 (1984), a petitioner is required to demonstrate two elements in order to state a successful claim for ineffective assistance of counsel: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 688, 694.

The first prong requires a showing that counsel's performance was deficient. However, constitutionally effective counsel embraces a "wide range of professionally competent assistance," and "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 690). The performance inquiry examines the reasonableness of trial counsel's actions under all circumstances, keeping in mind that a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight." *Id.* (quoting *Rompilla v. Beard*, 545 U.S. 374, 408 (2005)). In assessing performance, a court must apply a "heavy measure of deference to counsel's judgments." *Id.* (quoting *Strickland*, 466 U.S. at 691). "A lawyer's decision not to pursue a defense does not constitute deficient performance if, as is typically the case, the lawyer has reasonable justification for the decision," *DeLuca v. Lord*, 77 F.3d 578, 588 n.3 (2d Cir. 1996), and "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* at 588 (citing *Strickland*, 466 U.S. at 690-91). Moreover, "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.*

The second prong focuses on prejudice to the petitioner. The petitioner is required to show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In this context, "reasonable probability" means that the errors were of a magnitude such that they "undermine[] confidence in the [proceeding's] outcome." *Pavel v. Hollins*, 261 F.3d 210, 216 (2d Cir. 2001) (quoting *Strickland*, 466 U.S. at 694). "The question to be asked in assessing the prejudice from counsel's errors . . . is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Henry v. Poole*, 409 F.3d 48, 63-64 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 695.)

b.    Application

Here, petitioner's claim fails to satisfy the first prong of *Strickland*. It was not objectively unreasonable for petitioner's trial counsel to fail to request that manslaughter in the second degree be submitted to the jury. Petitioner argues that the lesser-included charge of manslaughter in the second degree would have been advantageous to petitioner and that there was no legitimate reason to fail to make the request. In New York, it is settled law that a lesser-included charge is warranted only when: (1) the more serious crime cannot be committed unless the lesser offense also is; and (2) there is a reasonable view of the evidence that would support a finding that the accused committed only the lesser, but not the greater, offense. *See* C.P.L. §§1.20(37), 300.50(1); *People v. Glover*, 57 N.Y.2d 61, 63 (1982). Here, the first prong of the lesser-included offense analysis is satisfied. Manslaughter in the second degree (Penal Law §125.15[1]) (recklessly causing the death of a person) is a lesser-included offense of murder in the second degree (Penal Law §125.25[1]) (causes the death of a person or another with the intent to cause the death of a person).

However, the second prong of the New York test is not satisfied, as there is no reasonable view that Mazariego acted recklessly, as opposed to intentionally, in stabbing Galindo. In New York, it is settled law that "[r]epeated shots, blows or acts of violence point towards deliberate action." *People v. Sanducci*, 195 N.Y. 361, 367-68 (1909). As was discussed *supra*, petitioner approached Galindo and Pareja and insulted them. Petitioner and his fellow MS-13 gang members then followed Galindo outside the bar and attacked him and his friends. A surveillance video appears to show petitioner opening a knife and seconds later making stabbing motions towards Galindo, and this same video shows Mazariego leaving the scene with that knife in his hand. Therefore, although petitioner claims that it would be reasonable to find recklessness as opposed to intent "in a common stabbing with multiple wounds to the chest whereby the attacker makes these several thrusts trying to find a way to get around the breastbone protecting the heart from the attacker's assault," such repeated thrusts indicate deliberate action, not recklessness, under New York law. (Pet. at 11.) Thus, because petitioner was not entitled to the lesser-included offense charge, the performance of trial counsel for petitioner was not objectively unreasonable, as requesting the charge would have been futile. *See Graziano v. United* States, 2013 WL 298116, at *12 (E.D.N.Y. Jan. 25, 2013) (counsel's failure to make "a meritless motion was certainly not ineffective"). Accordingly, petitioner's claim of ineffective assistance of counsel must fail.

Although Mazariego's failure to show deficient performance disposes of his ineffective assistance claim, the Court also finds that, even assuming *arguendo* that trial counsel's performance was deficient, any alleged deficiencies in his trial counsel's performance did not result in prejudice to petitioner's case. "In evaluating the prejudice suffered by a petitioner as a result of counsel's deficient performance, the court looks to the 'cumulative weight error' in order to determine whether the prejudice 'reache[s]' the constitutional threshold." *Sommerville v. Conway*, 281 F. Supp. 2d 515, 519 (E.D.N.Y. 2003) (quoting *Lindstadt v. Keane*, 239 F.3d 191, 202 (2d Cir. 2001)). "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. For the reasons discussed *supra*, particularly the video evidence that indicates that petitioner

9

intentionally stabbed Galindo, there is no basis to conclude that, absent counsel's purported deficiencies, there was a reasonable probability that the result of the proceeding would have been different had petitioner's counsel requested a manslaughter in the second degree charge.

Accordingly, petitioner did not receive constitutionally deficient assistance of trial counsel with respect to the failure to request a charge for manslaughter in the second degree. Thus, Mazariego's request for habeas relief on the ground of ineffective assistance of trial counsel is denied. *See, e.g.*, *Jackson v. Morgenthau*, No. 07 Civ. 2757 (SAS) (THK), 2009 WL 1514373, at *15-16 (S.D.N.Y. May 28, 2009) (finding effective assistance of counsel and dismissing habeas petition when petitioner claimed that trial counsel did not sufficiently challenge the evidence supporting the indictment).

2.    Sufficiency of the Evidence Claims

Petitioner claims that his conviction for attempted assault in the second degree was against the weight of the evidence and that his conviction for manslaughter in the first degree was both not supported by legally sufficient evidence and was against the weight of the evidence (Pet. at 3.). Both claims implicate a common legal standard, so they are consolidated here for purposes of this Memorandum and Order.

As an initial matter, "weight of evidence" is the name of a specific claim under New York State law and, thus, is not cognizable on federal habeas review. *See, e.g.*, *Correa v. Duncan*, 172 F. Supp. 2d 378, 381 (E.D.N.Y. 2001) ("A 'weight of the evidence' argument is a pure state law claim grounded in New York Criminal Procedure Law § 470.15(5), whereas a legal sufficiency claim is based on federal due process

principles."); *see also Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law."). However, the Court will construe the *pro se* petition as asserting sufficiency of the evidence claims under the Fourteenth Amendment's Due Process Clause. *See Einaugler v. Supreme Court of the State of N.Y.*, 109 F.3d 836, 839 (2d Cir. 1997) (stating that due process prohibits "conviction 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which [the defendant] is charged'" (quoting *In re Winship*, 397 U.S. 358, 364 (1970))).

With respect to the attempted assault in the second degree claim, the Appellate Division ruled on the merits that "the verdict of guilt as to . . . attempted assault in the second degree was not against the weight of the evidence." *People v. Mazariego*, 986 N.Y.S.2d 235, 237 (App. Div. 2d Dep't. 2014). With respect to the manslaughter in the first degree claim, the Appellate Division ruled on the merits that the evidence at petitioner's trial was "legally sufficient to establish [his] guilt of that offense beyond a reasonable doubt." *Id.* For the reasons set forth below, the Court concludes that these rulings were neither contrary to, nor an unreasonable application of, clearly established federal law, nor were they unreasonable determinations of the facts in light of the entire record. Thus, these claims do not entitle petitioner to habeas relief.

a.    Legal Standard

The law governing habeas relief from a state conviction based on insufficiency of the evidence is well established. A petitioner "'bears a very heavy burden'" when challenging evidentiary sufficiency in a writ of habeas corpus. *Einaugler v. Supreme Court of N.Y.*, 109 F.3d 836, 840 (2d Cir.

1997) (quoting *Quirama v. Michele*, 983 F.2d 12, 14 (2d Cir. 1993)). A criminal conviction in state court will not be reversed if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also Policano v. Herbert*, 507 F.3d 111, 115-16 (2d Cir. 2007) (stating that "[i]n a challenge to a state criminal conviction brought under 28 U.S.C. § 2254 . . . the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt" (quoting *Jackson*, 443 U.S. at 324)). Even when "'faced with a record of historical facts that supports conflicting inferences [a court] must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *Wheel v. Robinson*, 34 F.3d 60, 66 (2d Cir. 1994) (quoting *Jackson*, 443 U.S. at 326). Petitioner cannot prevail on a claim of legally insufficient evidence unless he can show that, viewing the evidence in the light most favorable to the prosecution, "'no rational trier of fact could have found proof of guilt beyond a reasonable doubt.'" *Flowers v. Fisher*, 296 F. App'x. 208, 210 (2d Cir. 2008) (quoting *Jackson*, 433 U.S. at 324). When considering the sufficiency of the evidence of a state conviction, "[a] federal court must look to state law to determine the elements of the crime." *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999).

b.    Application

1.  Attempted Assault in the Second Degree Count

Notwithstanding that the Court has determined that petitioner has procedurally defaulted on his claim regarding the sufficiency of the evidence of the attempted assault in the second degree conviction, the Court nonetheless proceeds to analyze the merits of this claim.

Petitioner argues that his conviction for attempted assault in the second degree was not based on legally sufficient evidence. (Pet. at 16.) The Appellate Division rejected this claim on the merits, holding that, "the verdict of guilt as to . . . attempted assault in the second degree was not against the weight of the evidence." *People v. Mazariego*, 986 N.Y.S.2d 235, 237 (App. Div. 2d Dep't. 2014). For the reasons set forth below, the Court concludes that the Appellate Division's ruling was not contrary to, or an unreasonable application of, clearly established federal law, nor was it an unreasonable determination of the facts.

In New York, "[a] person is guilty of assault in the second degree when . . . [w]ith intent to cause serious physical injury to another person, he causes such injury to such person or a third person by means of a deadly weapon or a dangerous instrument." N.Y. Penal Law § 120.05[2]. Also, in New York, "[a] person is guilty of an attempt to commit a crime when, with intent to commit a crime, he engages in conduct which tends to effect the commission of such crime." N.Y. Penal Law §110.00.

Petitioner contends that this conviction is not supported by legally sufficient evidence because "Mr. Miranda testified that he was beaten with a belt by the bouncer himself."

(Pet. at 16.) Petitioner misconstrues the standard for liability for attempted assault. As was discussed *supra*, petitioner is liable for attempted assault in the second degree if the jury found that petitioner had the intent to cause serious physical injury to Miranda and engaged in conduct to effect the crime, even if he himself did not cause Miranda's injuries. Furthermore, under New York law, "[w]hen one person engages in conduct which constitutes an offense, another person is criminally liable for such conduct when, acting with the mental culpability required for the commission thereof, he solicits, requests, commands, importunes, or intentionally aids such person to engage in such conduct." N.Y. Penal Law § 20.00.

The evidence here is sufficient to support petitioner's conviction. First, petitioner was part of the MS-13 group that attacked Miranda. (T. 616-21; People's Exhibit 3.) Second, Miranda and another witness both testified that, contrary to petitioner's claim, another individual, not the bouncer, attacked Miranda with the belt. (T. 477-78, 639-42.) Therefore, it was reasonable for the jury to conclude that petitioner intended to cause serious physical injury to Miranda and that petitioner engaged in conduct to effectuate the assault in the second degree with a deadly weapon or a dangerous instrument, either by attempting to assault Miranda himself or by aiding another individual who attempted to assault Miranda.

In sum, the Court concludes that the evidence was legally sufficient for a rational trier of fact to find petitioner guilty of attempted assault in the second degree beyond a reasonable doubt. Therefore, the Court finds that petitioner's sufficiency of the evidence claim is without merit, and thus, the state court's ruling was not contrary to, or an unreasonably application of, clearly

established federal law. *See* 28 U.S.C. § 2254(d)(1).

### 2. Manslaughter in the First Degree Count

Petitioner also argues that his conviction for manslaughter in the first degree was not supported by legally sufficient evidence. (Pet. at 20.) Petitioner claims that his co-defendant killed Galindo, which insulates petitioner from liability for the manslaughter in the first degree count. The Appellate Division rejected this claim on the merits, holding that the evidence at petitioner's trial was "legally sufficient to establish [his] guilt of that offense beyond a reasonable doubt." *People v. Mazariego*, 986 N.Y.S.2d 235, 237 (App. Div. 2d Dep't. 2014). For the reasons set forth below, the Court concludes that the Appellate Division's ruling was not contrary to, or an unreasonable application of, clearly established federal law. Nor was it an unreasonable determination of the facts.

In New York, "[a] person is guilty of manslaughter in the first degree when . . . [w]ith intent to cause serious physical injury to another person, he causes the death of such person or of a third person." N.Y. Penal Law § 125.20[1]. Furthermore, New York law holds that "[w]hen one person engages in conduct which constitutes an offense, another person is criminally liable for such conduct when, acting with the mental culpability required for the commission thereof, he solicits, requests, commands, importunes, or intentionally aids such person to engage in such conduct." N.Y. Penal Law § 20.00. Therefore, contrary to petitioner's contention that he cannot be convicted of manslaughter in the first degree because he claims he did not stab Galindo, whether petitioner committed the stabbing is not dispositive in regard to his criminal liability for this count because he could have been criminally liable

by aiding the crime. *See People v. Duncan*, 46 N.Y.2d 74, 80 (1978) ("There is no distinction between liability as a principal and criminal culpability as an accessory.")

The evidence here is sufficient to support petitioner's conviction. First, petitioner was part of the group of MS-13 gang members that followed Galindo, Pareja and Miranda out of the El Pacifico bar and attacked them, resulting in Galindo's death. (T. 616-21.) Second, Antonio Gutierrez testified that petitioner told him that he "killed somebody" at the bar. (*Id.* at 564.) Third, petitioner was seen on a surveillance video making motions that could be reasonably construed as opening a knife and stabbing Galindo. (People's Exh. 3.) Finally, even disregarding Gutierrez's testimony and the video evidence that could reasonably be construed as petitioner stabbing Galindo, petitioner was seen on the videotape fighting with Galindo, supporting a conviction as an accessory. (Pet. at 20.)

Petitioner argues that, since he was wearing a bandage on his hand at the time of the stabbing, he could not have possibly stabbed Galindo. (T. 441.) However, as noted above, a manslaughter in the first degree conviction does not require that petitioner actually stabbed Galindo. *See Duncan*, 46 N.Y.2d at 80. Since petitioner was part of the group that fought the Sur Trece gang members and was seen on the surveillance video fighting with Galindo, it was reasonable for the jury to find both that petitioner intended to seriously injure Galindo and that he intentionally aided another MS-13 gang member in the killing of Galindo, even if he did not commit the stabbing himself, which is sufficient to find criminal liability under New York law. *See* N.Y. Penal Law §§ 20.00, 125.20[1].

In sum, the Court concludes that the evidence was legally sufficient for a rational trier of fact to find petitioner guilty of manslaughter in the first degree beyond a reasonable doubt. Therefore, the Court finds that petitioner's sufficiency of the evidence claims are without merit, and thus, the state court's ruling was not contrary to, or an unreasonable application of, clearly established federal law. *See* 28 U.S.C. § 2254(d)(1).

### 3. Admission of Detective Londono's Expert Testimony

Notwithstanding that the Court has determined that petitioner has procedurally defaulted on his claim regarding expert testimony, the Court nonetheless proceeds to analyze the merits of this claim.

Petitioner argues that the trial court improperly certified Detective Gonzolo Londono as an expert witness. (Pet. at 18.) Specifically, petitioner argues that the trial court was in error by certifying Londono as an expert in the MS-13 gang and "allow[ing] him to testify as to gang history, the identification of persons seen on a surveillance video, the throwing of gang signs by persons on the video, and his opinion and explanation of what he saw on the video as it was played to the jury . . . depriv[ing] petitioner of due process right[s] guaranteed by the U.S. [C]onstitution." (*Id.*) This Court disagrees.

#### a. Legal Standard

It is well-settled that "[e]rroneous evidentiary rulings do not automatically rise to the level of constitutional error sufficient to warrant issuance of a writ of habeas corpus." *Taylor v. Curry*, 708 F.2d 886, 891 (2d Cir. 1983); *see generally Estelle v. McGuire*, 502 U.S. 62, 67 (1991)

("[H]abeas corpus relief does not lie for errors of state law." (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)). Instead, for a habeas petitioner to prevail in connection with a claim regarding an evidentiary error, the petitioner must "show that the error deprived [him] of a fundamentally fair trial." *Taylor*, 708 F.2d at 891; *see also Zarvela v. Artuz*, 364 F.3d 415, 418 (2d Cir. 2004) ("Even erroneous evidentiary rulings warrant a writ of habeas corpus only where the petitioner 'can show that the error deprived [him] of a fundamentally fair trial.'" (quoting *Rosario v. Kuhlman*, 839 F.2d 918, 925 (2d Cir. 1988)). In other words, "[t]he introduction of improper evidence against a defendant does not amount to a violation of due process unless the evidence 'is so extremely unfair that its admission violates fundamental conceptions of justice.'" *Dunnigan v. Keane*, 137 F.3d 117, 125 (2d Cir. 1998) (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)).

To constitute a denial of due process under this standard, the erroneously admitted evidence must have been "sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it." *Dunnigan*, 137 F.3d at 125 (quoting *Johnson v. Ross*, 955 F.2d 178, 181 (2d Cir. 1992)); *see also Collins v. Scully*, 755 F.2d 16, 19 (2d Cir. 1985) (holding that evidence must be "crucial, critical, highly significant") (citation omitted). Moreover, the court "must review the erroneously admitted evidence in light of the entire record before the jury." *Dunnigan*, 137 F.3d at 125 (citation omitted). In making this due process determination, the Court should engage in a two-part analysis, examining (1) whether the trial court's evidentiary ruling was erroneous under New York State

law, and (2) whether the error amounted to the denial of the constitutional right to a fundamentally fair trial. *See Wade v. Mantello*, 333 F.3d 51, 59 n.7 (2d Cir. 2003); *Davis v. Strack*, 270 F.3d 111, 123-24 (2d Cir. 2001). As set forth below, the Court has reviewed petitioner's objections regarding certifying Londono as an expert and allowing his testimony under this two-part test and concludes that they do not warrant habeas relief.

b.   Application

As to the first part of the two-part analysis, under New York law, expert testimony may be introduced into evidence "when it would help to clarify an issue calling for professional or technical knowledge, possessed by the expert and beyond the ken of the typical juror." *De Long v. Erie County*, 60 N.Y.2d 296, 307 (1983). "A witness's qualification to testify as an expert rests in the discretion of the trial court, and its determination will not be disturbed in the absence of a serious mistake, an error of law, or abuse of discretion." *Werner v. Sun Oil Co.*, 65 N.Y.2d 839, 840 (1985).

Under this standard, the trial court did not make an erroneous evidentiary ruling under New York law by qualifying Detective Londono as an expert on the MS-13 gang. Even accepting as true petitioner's contention that Detective Londono "has no specialized training in gangs other than that given to all police officers," the trial court was within its discretion in deeming him an expert. (Pet. at 18). Detective Londono has investigated many gang-related murders throughout his career, he previously worked for one year on an FBI task force tasked with combating gang violence on Long Island, and he previously traveled to El Salvador to work with local police on crimes related to the MS-13 gang (T. 409-20.) Therefore, Detective Londono

certainly had the requisite knowledge to give him expertise about MS-13 beyond the knowledge of a "typical juror." *De Long*, 60 N.Y.2d at 307. Contrary to petitioner's claim that Detective Londono "was not anymore likely to understand what was going on than the jury that viewed the same video," Detective Londono had the experience and knowledge "to testify as to the gang history, the identification of persons seen on a surveillance video, the throwing of gang signs by persons on the video, and his opinion and explanation of what he saw on the video" due to his extensive experience investigating MS-13. (Pet. at 18.)

Assuming *arguendo* that the trial court erroneously deemed Detective Londono an expert and that his testimony was therefore improper under New York law, this purported error would not violate petitioner's due process right to a fair trial. As was discussed *supra*, petitioner was seen on video as part of the group that attacked the Sur Trece gang members. That video also shows petitioner directly participating in the brawl, and an independent witness testified that petitioner admitted to him that he murdered somebody on the night of the crimes for which petitioner was convicted. Therefore, even without Detective Londono's testimony to explain MS-13 and petitioner's role in the brawl, there was overwhelming evidence to convict petitioner of all of the crimes for which he was convicted. Therefore, even if Detective Londono's testimony was improper under New York law, that testimony was not a violation of petitioner's constitutional due process rights because it was not "sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it." *Dunnigan*, 137 F.3d at 125.

### 4. Resentencing

Notwithstanding that the Court has determined that petitioner has procedurally defaulted on his claim regarding resentencing, the Court nonetheless proceeds to analyze the merits of this claim. Petitioner argues that, under New York State Procedural Law § 380.20, he should have been resentenced on all counts when he was resentenced on the gang assault in the first degree count. This claim has no merit. [3]

### a. Legal Standard

New York Criminal Procedure Law holds that "[t]he court must pronounce sentence in every case where a conviction is entered. If an accusatory instrument contains multiple counts and a conviction is entered on more than one count the court must pronounce sentence on each count." C.P.L. § 380.20. As set forth below, the Court has reviewed petitioner's claim that he should have been

---

[3] To the extent petitioner raises a claim under the Eighth Amendment, his sentence is not disproportionate to the crimes for which he was convicted. The Eighth Amendment forbids only extreme sentences which are "grossly disproportionate" to the crime of conviction. *Lockyer v. Andrade*, 538 U.S. 63, 72-73 (2003). "The gross disproportionality principle reserves a constitutional violation for only the extraordinary case." *Id.* at 77. Outside of the context of capital punishment, successful challenges to the proportionality of particular sentences under the Eighth Amendment have been "exceedingly rare." *Rummel v. Estelle*, 445 U.S. 263, 272 (1980). The Supreme Court in *Lockyer* held that a state appeals court's determination that a habeas petitioner's sentence of two consecutive prison terms of 25 years to life for petty theft under California's "Three Strikes" law was not disproportionate, did not constitute cruel and unusual punishment, and was not an unreasonable application of clearly established Supreme Court law. *Lockyer*, 538 U.S. at 77. Under the applicable standards, given petitioner's violent conduct, his sentence can hardly be considered contrary to, or an unreasonable application of clearly applicable federal constitutional law.

resentenced on all counts and concludes that it does not warrant habeas relief.

### b.  Application

As a threshold matter, petitioner's claim implicates only state law and is therefore not cognizable on habeas review. *See Jenkins v. Stallone*, 2015 WL 1788713, at *7, n.8 (N.D.N.Y. Apr. 17, 2015) (noting that a claim based on an "alleged failure to meet the requirements of CPL 380.20" would not be cognizable on habeas corpus review because "federal habeas relief does not lie to correct errors of state law"). Thus, as was discussed *supra*, the claim cannot be heard pursuant to AEDPA.

Assuming *arguendo* that this claim could be heard on federal habeas review, petitioner's claim still fails. The sentencing court did in fact pronounce a sentence on all other counts when sentence was imposed on the modified attempted gang assault in the first degree count. (*See* Minutes of Resentencing, ECF No. 5-18 (holding that the sentence on the attempted gang assault in the first degree count would run concurrently to all other counts).) Furthermore, even without this pronouncement, the sentencing court complied with C.P.L. § 380.20, as the conviction was remanded solely on the attempted gang assault in the first degree count. *See People v. Mazariego*, 986 N.Y.S.2d 235 (App. Div. 2d Dep't. 2014) (remanding the matter solely for sentencing on the attempted gang assault in the first degree count). Thus, given that the trial court was under no state law duty to resentence petitioner on all counts, petitioner's claim that he should have been resentenced on all counts fails.

### IV.  CONCLUSION

In sum, the Court concludes that petitioner's claims that (1) Detective Londono was improperly certified as an expert and that his testimony was therefore improperly allowed; (2) his conviction for attempted assault in the second degree was against the weight of the evidence; and (3) he should have been resentenced on all counts when he was resentenced on the attempted gang assault in the first degree count are all procedurally barred from federal habeas review. However, even if those claims were not procedurally barred, the Court finds that all the claims set forth in the petition are substantively without merit because the state court's rulings were not contrary to, or an unreasonable application of, clearly established federal law.

Therefore, the petition for a writ of habeas corpus is denied in its entirety, and because petitioner has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue. *See* 28 U.S.C. § 2253(c)(2). The Clerk of the Court shall close this case.

SO ORDERED.

_____

JOSEPH F. BIANCO
United States District Judge

Dated: July 26, 2017
Central Islip, New York

\*\*\*

Petitioner is proceeding *pro se*. Respondent is represented by John B. Latella and Tammy J. Smiley, Assistant District Attorneys,

Nassau County District Attorney's Office, 262 Old Country Road, Mineola, NY 11501.